UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


KEVIN STEVENS, JR.,

        Petitioner,

                                    CIVIL NO. 2:15cv28
   v.                   [ORIGINAL CRIMINAL NO. 2:11cr73]

UNITED STATES OF AMERICA,

        Respondent.


**MEMORANDUM OPINION AND FINAL ORDER**

This matter comes before the court on the Petitioner's, Kevin Stevens, Jr., pro se Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion"), filed on February 23, 2015. ECF No. 365.[1]

On January 16, 2015, the Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 18 U.S.C. § 2255, subject to defect for failure to include two copies. ECF No. 359. On February 1, 2015, the court instructed the Petitioner to correct the defect within thirty (30) days. ECF No. 360. The Petitioner complied with this instruction on February 23, 2015, by submitting two copies of the operative Motion, which slightly amended his original submission. See ECF No. 365. On that same day, the Petitioner also filed a Motion for Leave of Court to Add

---

[1] Because the Motion is a pro se submission, the court construes it liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

to Original Pleadings ("Motion for Leave to Amend"), because the instant Motion differed slightly from the original motion, and the Petitioner "was unable to locate his original copy that he sent in" and the operative Motion added "a demonstrat[ion] of a closing argument that Counsel coul[d] have used in support." ECF No. 362. The court granted the Petitioner's Motion for Leave to Amend, see Order of Feb. 27, 2015, ECF No. 364,[2] and thus will proceed on the Motion filed February 23, 2015. On June 22, 2015, the Petitioner filed a Second Motion for Leave to Amend Original § 2255 Motion Pursuant to Federal Rule of Civil Procedure 15(c) ("Second Motion for Leave to Amend"). ECF No. 372. The court granted the Second Motion for Leave to Amend, see Order of June 24, 2015, ECF

---

[2] Section 2255(f)(1) provides that a motion is timely if it is filed within one year of "the date on which the judgment of conviction becomes final." A "federal judgment becomes final 'when this [Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari,' or, if a petitioner does not seek certiorari, 'when the time for filing a certiorari petition expires.'" Gonzalez v. Thaler, 132 S. Ct. 641, 653 (2012) (quoting Clay v. United States, 537 U.S. 522, 527 (2003)). The Petitioner's petition for certiorari was timely filed on December 6, 2013, and it was denied by the Supreme Court on January 13, 2014. Stevens v. United States, 134 S. Ct. 979 (2014) (No. 13-7754). The Petitioner's original § 2255 motion was filed by the Clerk subject to defect on January 16, 2015. However, the court accepts the original motion as effectively filed on the date the Petitioner certifies he placed it in the prison's internal mailing system, which was January 12, 2015. See Houston v. Lack, 487 U.S. 266 (1988) (articulating the "prison mailbox rule"). Thus, the original § 2255 motion was timely filed, and the instant Motion, which relates back to the original motion, is timely as well.

No. 373, and has considered the additional arguments contained therein in rendering this Opinion.[3]

## I. BACKGROUND

The Petitioner and co-defendant Xavier Holley ("Holley") were tried by a jury. After a four-day jury trial, the Petitioner and Holley were both found guilty, on July 13, 2012, of all five counts of the Second Superseding Indictment. Count One charged the Petitioner with Conspiracy to Interfere with Commerce by Violence, in violation of 18 U.S.C. § 1951; Count Two charged the Petitioner with Attempt to Interfere with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951-52; Count Three charged the Petitioner with Use and Carry of a Firearm During a Violent Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (c)(2); Count Four charged the Petitioner with Attempt to Interfere with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951-52; and Count Five charged the Petitioner with Use of a Firearm Causing Death During a Violent Crime, in violation of 18 U.S.C. § 924(c)(1)(A) & (j)(1)-(2). Second Superseding Indictment at 1-6, ECF No. 210.[4]

---

[3] The Petitioner does not assert any new grounds for relief in his Second Motion for Leave to Amend. Instead, he only raises supplemental arguments in support of those grounds set forth in the operative Motion of February 23, 2015, which arguments the court has considered herein. See supra note 1.

[4] The counts listed in the Indictment, the Superseding Indictment, and the Second Superseding Indictment do not change. Only the names of the defendants and, in the case of Holley, the counts with which he was charged, differ from indictment to indictment.

The Petitioner was sentenced on October 23, 2012, to the following: life imprisonment on Count Five; two hundred forty (240) months imprisonment on Count One, to be served concurrently; two hundred forty (240) months imprisonment on Count Two, to be served concurrently; sixty (60) months imprisonment on Count Three, to be served consecutively to all other counts; and two hundred forty (240) months imprisonment on Count Four, to be served concurrently. Stevens J. at 2, ECF No. 285. In effect, the Petitioner was sentenced to life plus sixty (60) months imprisonment.[5]

The Petitioner now challenges his conviction and sentence based on two claims of ineffective assistance of counsel. For the reasons set forth herein, the Motion is **DENIED**.[6]

### A. Nature of the Crime

The conduct leading to the Petitioner's ultimate conviction stems from a failed attempt to rob the Gold Shop, a business in

---

However, in the Second Superseding Indictment, Holley was charged with the same five counts as the Petitioner.

[5] Holley was also found guilty of all five counts with which he was charged, and also received a sentence of life plus sixty (60) months imprisonment. Holley J. at 2, ECF No. 287; see supra note 4 and accompanying text.

[6] The Motion, files, and records of the case conclusively show that the Petitioner is entitled to no relief. Accordingly, the court will not hold an evidentiary hearing. United States v. Baysden, 326 F.2d 629, 631 (4th Cir. 1964); see also United States v. Ehi, No. 96-7140, 1997 U.S. App. LEXIS 35834, at *3-4 (4th Cir. Dec. 19, 1997).

Portsmouth, Virginia. Second Superseding Indictment at 2. The Gold Shop specialized in the sale of jewelry and the purchase of precious metals from customers. Tr. of July 11, 2012 ("Day 2 Transcript"), at 92, ECF No. 318.[7] Evidence presented at trial established that on October 6, 2010, co-defendant Ronald Gober II ("Gober") drove the Petitioner and co-defendants Montarius Murry ("Murry") and Holley to the Gold Shop, using co-defendant Raneisha Sifford's ("Sifford") automobile. Id. at 227-30, 233-37.[8] Murry and the Petitioner, who was carrying a gun given to him by Holley, entered the Gold Shop with the intention of robbing the business. Tr. of July 12, 2012 ("Day 3 Transcript"), at 6-10, ECF No. 319. During the course of the robbery attempt, the Petitioner shot and killed Robert Nelson, a part-time employee of the Gold Shop. Id. at 10-13; 133-134; Day 2 Tr. at 142-47.

---

[7] The transcripts for each day of trial are separate documents. However, the pagination is continuous throughout the several documents. Instead of citing to the page number in the upper-right hand corner of the transcript, the court will cite to the page number given to each day's transcript by the court's electronic filing system.

[8] Sifford drove Murry, the Petitioner, and an unindicted co-conspirator to the scene of the crime for an aborted robbery attempt on October 5, 2010. Tr. of July 12, 2012 ("Day 3 Transcript"), at 82-83, ECF No. 319. Sifford loaned them her car the next day, the date of the murder and second attempted robbery. Id. at 91.

## B. Pre-Trial Procedural History

### 1. The First Indictment and Initial Appearances

On May 4, 2011, the Petitioner, along with three co-defendants — Murry, Holley, and Sifford — were charged in a five-count Indictment. ECF No. 6.[9] The Petitioner and Murry were originally charged with Counts One through Five; Holley was charged with Counts One, Four, and Five; and Sifford was charged with Counts One through Three. Id.[10] Count Five, the felony murder charge, is the key charge here, as it carried a sentence of death or life imprisonment, 18 U.S.C. § 924(j)(1),[11] and lies at the center of one of the Petitioner's claims of ineffective assistance of counsel. See Mot. at 4.[12]

The Petitioner and co-defendants Murry and Holley all made their initial appearances together on May 6, 2011, at which point

---

[9] See supra note 4 and accompanying text for a description of all five counts.

[10] Sifford pled guilty to Count Three on August 15, 2011, see Sifford Plea Agreement ¶ 1, ECF No. 75, and was sentenced to sixty (60) months imprisonment on November 16, 2011. Sifford J. at 2, ECF No. 115.

[11] On August 9, 2011, the United States filed a Notice to the Court indicating that it would not seek the death penalty for Count Five. ECF No. 72. Thus, the maximum penalty faced by the Petitioner and the co-defendants who were charged with felony murder was life imprisonment.

[12] Citations to specific pages of the Motion are citations to the page number given the document by the court's electronic filing system, not the page number that is part of the standard form habeas petition used by the Petitioner.

they were informed of the charges against each of them and the statutory maximum sentences they could receive. See Minute Entry for Proceedings Held Before Mag. J. Miller on May 6, 2011. The Petitioner, Murry, and Holley were then arraigned together on these same charges on May 25, 2011. See Minute Entry for Proceedings Held Before Mag. J. Miller on May 25, 2011.

The Petitioner claims that, in his first substantive conversation with defense counsel, Emily Munn and David Good, he was asked whether he was willing to testify against Murry, whom, at the time, the United States believed to be the shooter. Mot. at 4. The Petitioner said that he was unsure at that point, but in their next meeting, he informed them that he "wanted to go to trial." Id.

### 2. Murry's Plea Agreement

On October 21, 2011, Murry pled guilty to Count One and Count Five, the felony murder charge. Murry Plea Agreement ¶ 1, ECF No. 102. On February 2, 2012, Murry was sentenced to two hundred forty (240) months imprisonment on Count One, and five hundred sixteen (516) months imprisonment on Count Five, to run concurrently. Murry J. at 2, ECF No. 173. The Petitioner alleges that after he was told that Murry would testify against him, he regretted his decision "to go to trial," Mot. at 4, and "told counsel to get me a plea deal." Id. at 11.

7

### 3. Superseding Indictment and Gober's Plea Agreement

After Murry pled guilty, a Superseding Indictment was filed in open court on December 19, 2011. ECF No. 118. The Superseding Indictment charged the Petitioner, Holley, and Gober with Count Five, the felony murder charge. Id. In addition, the Superseding Indictment charged the Petitioner and Holley with Counts One through Four, and Gober with Counts One and Four. Id. The Petitoner and Holley were arraigned together on these charges on January 4, 2012. Minute Entry for Proceedings Held Before Mag. J. Stillman on Jan. 4, 2012. A jury trial was set for February 27, 2012. Id.[13]

Gober pled guilty to Count Five, the felony murder charge, on January 18, 2012. Gober Plea Agreement ¶ 1, ECF No. 156. On April 24, 2012, Gober was sentenced to three hundred (300) months imprisonment. Gober J. at 2, ECF No. 190.

### 4. Second Superseding Indictment

The Government filed a Second Superseding Indictment on June 20, 2012, in which both the Petitioner and Holley were again charged with all five counts. ECF No. 210. They were arraigned together on these charges on June 27, 2012. Minute Entry for

---

[13] However, on February 27, 2012, all pending motions were heard, necessitating a new trial date on the Superseding Indictment. See ECF No. 177. The Petitioner and Holley were then again arraigned together on the charges set forth in the Superseding Indictment on March 28, 2012. Minute Entry for Proceedings Held Before Mag. J. Miller on Mar. 28, 2012 (resetting trial date for July 10, 2012).

Proceedings Held Before Mag. J. Stillman on June 27, 2012. At this juncture, it was clear that the Petitioner and Holley were the only two co-defendants who were electing to proceed to trial, as the other three co-defendants all pled guilty prior to the Second Superseding Indictment. A jury trial was set for July 10, 2012. Id.

### 5. History of Plea Agreement Offers Made to the Petitioner

Before trial began on July 10, 2012, in accordance with the Supreme Court's recommendation to prosecutors and trial courts to "adopt some measures to help ensure against late, frivolous, or fabricated claims" about the plea negotiation stage, Missouri v. Frye, 132 S. Ct. 1399, 1408–09 (2012), this court held a hearing to review, on the record, any plea offers that were made to the Petitioner and to Holley. Tr. of Pretrial Plea Colloquy, ECF No. 369. At this hearing, the United States informed the court that it made three offers to the Petitioner: one in August 2011, one on January 27, 2012, and one on June 28, 2012. Id. at 4. All three offers included a plea of guilty to Count One (Hobbs Act conspiracy) and Count Five (felony murder). Id. The third and final offer added a non-binding stipulation that a two-level reduction for acceptance of responsibility would be appropriate at sentencing. Id. Both of the Petitioner's trial counsel agreed with this representation, adding that as recently as four days before

trial, they had spoken to the Assistant United States Attorney to calculate what the Petitioner's sentencing guideline range might have been pursuant to the plea deals offered. Id. at 6. They had determined that, even with the acceptance of responsibility reduction, the guidelines would call for a sentence of life imprisonment, as opposed to lower, non-binding, guideline ranges for other co-defendants. See id. Both this calculation and the United States' offers were communicated to the Petitioner. Id. at 6-7. Counsel represented that the Petitioner "has been included in those conversations" and that "he has been informed, and that he has chosen on his own, after being fully advised of the consequences, that he does not wish to plead guilty . . . and that he wishes to go to trial today." Id. at 7. The Petitioner was then placed under oath, after which he confirmed the representations made by his counsel and by the United States. Id. at 7-8.

### C. Hobbs Act Jurisdiction

Prior to trial, on January 17, 2012, counsel for the Petitioner filed a Motion to Dismiss all counts of the Superseding Indictment for lack of jurisdiction. ECF No. 151. Specifically, counsel argued that, because the United States based the jurisdiction for its charges on the Hobbs Act, 18 U.S.C. § 1951,[14] all charges should be dismissed because the relevant conduct lacked the requisite effect on interstate commerce. Mot. Dismiss

---

[14] See infra Part III.A.

at 7. At a hearing on February 27, 2012, the court found that the allegations in the Superseding Indictment that the Gold Shop "engaged in the provision of goods and services in interstate commerce" and that it "was engaged in an industry that affected interstate commerce," were sufficient to satisfy the jurisdictional nexus at this stage of the proceedings. Tr. of Feb. 27, 2012 ("Motions Hearing Transcript"), at 155, ECF No. 316. The court did note that the Petitioner would be permitted to renew this motion "at the appropriate time during the course of the trial." Id. at 155-56.

At trial, the United States called Tom Tidwell, the owner of the Gold Shop, as a witness. With the support of an invoice, Exhibit 9-2, Tidwell testified that he received some of his supplies from "National Jewelers in Milford, Maryland." Day 2 Tr. at 93. Further, Tidwell stated that he had shipped items out-of-state to both middlemen and refineries. Id. at 93, 115. Specifically, Tidwell said that metals were shipped to his brother in South Carolina, to Carolina Jewelers in South Carolina, and to middlemen in Georgia. Id. The Gold Shop also served individuals who came to the Gold Shop from out-of-state, as evidenced by a customer sales sheet, Exhibit 9-3, which included a sale to an individual from North Carolina, as well as by testimony from Tidwell that he had customers from Maryland and North Carolina. Id. at 93-94, 115. Tidwell further testified that he maintained a

11

website, which was available to customers both in- and out-of-state. Id. at 112-13.

At the conclusion of the trial, Emily Munn, co-counsel for the Petitioner, renewed the argument that the court lacked jurisdiction under the Hobbs Act. She argued that "[t]here was not one piece of evidence about how much money he lost" based on interstate commerce due to having his store temporarily closed. Day 3 Tr. at 226. Furthermore, she claimed that Tidwell "said that the middleman who he worked with the most" had his shop in Richmond, Virginia. Id. In sum, she argued that there was no link to out-of-state commerce other than a general reference to working with out-of-state refineries, and that Tidwell was unable to specify whether the amount of interstate commerce "was $5 or $500,000." Id. However, the court found that the evidence introduced at trial showed supplies coming into the state from out-of-state, items being shipped out-of-state to middlemen and refineries, and customers coming from out-of-state — all of which were sufficient to establish jurisdiction under the Hobbs Act. Id. at 230-31.[15] In fact, the court noted that any one of these pieces of evidence, standing alone, would likely suffice to establish jurisdiction under the Hobbs Act. Id. at 231.

---

[15] See infra Part III.A.

## D. **Post-Trial Proceedings**

The Petitioner and Holley timely appealed their convictions on October 25, 2012. ECF No. 289. On September 9, 2013, the Court of Appeals for the Fourth Circuit affirmed the convictions and sentences, specifically finding that Hobbs Act jurisdiction had been satisfied in this case. United States v. Stevens, 539 F. App'x 192, 194 (4th Cir. 2013). The Petitioner timely filed a petition for certiorari with the United States Supreme Court on December 6, 2013, see Stevens v. United States, 134 S. Ct. 979 (2014) (No. 13-7754), which was denied on January 13, 2014. Id.

The Petitioner then timely filed this Motion for collateral review.[16] The Petitioner's Motion raises two grounds for relief:[17] (1) trial counsel was ineffective in failing to object to evidence concerning the effect on interstate commerce required under the Hobbs Act; and (2) trial counsel was ineffective at the plea bargaining stage for not securing him a guilty plea. Neither claim of ineffective assistance of counsel is meritorious.

---

[16] See supra note 2.

[17] The Petitioner's form habeas corpus Motion initially lists Grounds One and Three, but does not include a Ground Two. Mot. at 3. Then, in the supplemental argument section, the Defendant submits arguments regarding Grounds One and Two. Id. at 11. The supplemental arguments raised concerning Ground Two are a continuation of the arguments initially labeled as Ground Three, and the court considers them to be one and the same. See id. at 3, 11. Therefore, the court will consider the two grounds for relief raised and briefed in the Motion, as Ground One and Ground Two.

## II. STANDARD OF REVIEW

In cases where a petitioner claims to have received ineffective assistance of counsel as grounds for relief, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Thus, a petitioner must show that: (1) the attorney's performance was seriously deficient; and (2) such deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. Id. at 687. The right to effective assistance of counsel is "a right that extends to the plea bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); see Frye, 132 S. Ct. at 1408 ("[C]riminal defendants require effective counsel during plea negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.") (internal quotation marks and citations omitted).

To show deficient performance, counsel's actions or omissions must be measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996); see Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). The court must attempt to "eliminate the distorting effects

of hindsight," and instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In doing so, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Because a petitioner must satisfy both parts of the test, a failure to carry the burden of proof as to one prong precludes relief and relieves the court of the duty to consider the other. Strickland, 466 U.S. at 700.

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel: Hobbs Act

The Petitioner first claims that counsel was ineffective for failing to adequately challenge evidence that showed that the Gold Shop was engaged in interstate commerce, and thus established jurisdiction under the Hobbs Act. Mot. at 3, 7-12; see also Second Mot. for Leave to Amend at 3-8. First, the Petitioner argues that counsel should have further queried whether Exhibit 9-2, an invoice of supplies, listed supplies for the Gold Shop or rather Tidwell's personal property. Mot. at 7. Next, the Petitioner

argues that counsel should have objected to Tidwell's testimony concerning out-of-state customers and Exhibit 9-3, the customer sales sheet, for lack of personal knowledge, pursuant to Federal Rule of Evidence 602. Id. at 7-8.[18] Further, the Petitioner argues counsel should have emphasized that the evidence indicates that Tidwell did not ship gold out-of-state, and that Tidwell improperly speculated as to what middlemen did once they received the gold. Id. at 8-9. The Petitioner also states that, pursuant to Federal Rule of Evidence 403, Tidwell's testimony concerning the Gold Shop's level of interstate commerce should have been excluded, as its probative value was substantially outweighed by the danger of unfair prejudice. Id. at 7-9; see Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . .") (emphasis added).[19] Finally, the Petitioner argues that Exhibits 9-1 (the lease for the Gold Shop), 9-2, and 9-3 should have been objected to as hearsay not permitted under Federal Rule of Evidence 803(6) (the "business records" exception). Second Mot. for Leave to Amend at 3-6. The

[18] Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

[19] The Petitioner also submitted a sample closing argument, which he believes would have instilled "reasonable doubt" into the jury about the interstate commerce requirement. Mot. at 9-11.

Second Motion for Leave to Amend also repeats many of the arguments raised in the operative Motion, although it newly argues that the evidence at question should have been objected to as hearsay. Id. at 7-8.

The Petitioner's assertions totally lack merit. Tidwell was the owner of the Gold Shop, and all of his testimony was proper. Moreover, the exhibits to which the Petitioner now objects were properly admitted in this case. There was nothing to which the Petitioner's counsel could, or should, have objected.[20] Moreover, the Petitioner's arguments stem from a misunderstood view of the breadth of the Commerce Clause as applied to the Hobbs Act. In relevant part, the Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). The statute defines commerce to include "all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof" and "all commerce between points within the same State through any place outside such State." Id. § 1953(b)(3). As this court noted at trial, and as the Fourth Circuit reiterated on appeal, the Hobbs

---

[20] See infra note 22.

17

Act requires only "a minimal effect on interstate commerce." Day 3 Tr. at 229 (quoting United States v. Williams, 342 F.3d 350, 354 (4th Cir. 2003)); see Stevens, 539 F. App'x at 194. This minimal effect "may be so minor as to be de minimis." United States v. Taylor, 754 F.3d 217, 222 (4th Cir. 2014).

For example, the "minimal effect" requirement exists when a robbery "depletes the assets of an inherently economic enterprise." United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012) (internal citation omitted). Further, courts "do not look at the impact of the immediate offense, but whether the relevant class of acts has such an impact." Id. (internal citation omitted); see also Taylor, 754 F.3d at 222 (noting that the class of acts should be viewed in the aggregate). This interstate commerce requirement has been satisfied "'even where the effect on interstate commerce is indirect, minimal and less than certain,' although the effect must be 'reasonably probable.'" United States v. Walker, 374 F. App'x 408, 410 (4th Cir. 2010) (quoting United States v. Buffey, 899 F.2d 1402, 1404 (4th Cir. 1990)). Satisfactory "minimal effects" have been found in cases where inventory is purchased from out-of-state, Tillery, 702 F.3d at 174, and even in cases where a drug dealer or a prostitute is robbed. Williams, 342 F.3d at 355 (drug dealer); United States v. Mohamadi, 461 F. App'x 328, 335-36 (4th Cir. 2012) (prostitute).

18

Given that a "minimal effect on interstate commerce" is all that is required for jurisdiction under the Hobbs Act, one cannot plausibly claim that the Petitioner's counsel was deficient for failing to further question Tidwell on the subject, object to pertinent exhibits, or focus on the issue in the closing argument. The Gold Shop, which Tidwell testified was primarily in the business of "buying and selling precious metals," was certainly involved in an inherently economic enterprise. Day 2 Tr. at 92. Moreover, the evidence introduced at trial clearly showed that there was at least a "minimal effect on interstate commerce."[21] Counsels' decision not to press this issue was likely a strategic decision, as any questioning beyond what was already done could have strained their credibility with the jury. In fact, the court noted at the end of trial, outside the presence of the jury, that the issue had been discussed "ad nauseam." Day 3 Tr. at 222.

Thus, as to his first claim of ineffective assistance of counsel, the Petitioner has failed to satisfy the performance prong of Strickland, and there is no need to turn to the prejudice prong. Strickland, 466 U.S. at 700.[22]

---

[21] See supra Part I.C.

[22] The court notes that the Petitioner has also failed to satisfy the prejudice prong. The evidence to which the Petitioner objects would certainly have been admitted pursuant to Federal Rules of Evidence 403, 602, and 803(6) even if an objection had been made, and this evidence far exceeds the minimal threshold needed for jurisdiction under the Hobbs Act.

## B. Ineffective Assistance of Counsel: Plea Negotiations

The Petitioner's second ground for claiming ineffective assistance of counsel involves claims of failures by the Petitioner's counsel in the plea bargaining process. This is the "classic case" addressed in Missouri v. Frye of the Petitioner trying to use the benefit of hindsight to argue that he would have accepted a plea offer after choosing to proceed to trial, where a jury found him to be guilty beyond a reasonable doubt. 132 S. Ct. at 1408-09 (encouraging prosecutors and courts to "adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences.").

In this case, the record conclusively shows that the Petitioner's counsel were not ineffective at the plea bargaining stage.[23] They actively negotiated with the Assistant United States Attorney, resulting in the United States making three plea offers, all of which required a plea of guilty to both Count One, the Hobbs Act conspiracy charge, and Count 5, the felony murder charge. All three offers were communicated to the Petitioner, who rejected all three. Tr. of Pretrial Plea Colloquy at 4-8. At the July 10, 2012, pre-trial hearing on the record, all parties, including the Petitioner under oath, agreed that the Petitioner

---

[23] See supra Part I.B.5.

had received, and rejected, three plea offers. Furthermore, the third, and final plea offer, which was made on June 28, 2012 — less than two weeks before the trial began — was the most favorable plea offer of the three, as it included a non-binding stipulation that the Defendant should receive credit for acceptance of responsibility at sentencing. Id. at 4. After the final plea offer expired, the Petitioner's counsel continued communicating with the Assistant United States Attorney to calculate what the Petitioner's unofficial guideline calculation would be, if he accepted the United States' plea offer. Id. at 6. Counsel consulted with the Petitioner about his potential sentence as late as the afternoon of the day before the trial began. Id. The Petitioner affirmed, under oath, that he was offered the three plea bargains, which he rejected. Id. at 8. The Petitioner's current assertion that his counsel was ineffective in failing to "get [him] a plea deal," is precisely the type of "frivolous[] or fabricated claims" that the Supreme Court warned against in Frye. 132 S. Ct. 1408-09.

The Petitioner raises meritless and rambling arguments relating to this claim of ineffective assistance of counsel. First, he argues that counsel "never explained the laws to me about conspiracy and never told me about aiding and abetting." Mot. at 4. He states that, if he had been explained these two legal doctrines, he would have "considered who all knows about the

21

robbery and knowing they could be charged with murder, that it would have been in my best interest to cooperate before they could." Id. He then represents, however, that it was not until he was informed that Murry was testifying against him, that he "told counsel to get me a plea deal." Id. at 11. This instruction to counsel would have been before either the Superseding Indictment or the Second Superseding Indictment, as Murry pled guilty on October 21, 2011, after which the Petitioner was offered and rejected two "plea deals."

Moreover, the record conclusively shows that the Petitioner was aware of who could be charged with felony murder at the onset of this case, regardless of whether he was explained the laws of conspiracy and aiding and abetting. In the initial Indictment, both Holley and Murry were charged with felony murder, along with the Petitioner. The Petitioner appeared with both of them at the initial appearance on May 6, 2011, where they were read the charges against them, and, again at the arraignment on May 25, 2011, where all three entered pleas of not guilty to the charges against them.[24] Thus, when the Petitioner received his first plea offer, in August 2011, he was aware that both Murry and Holley — neither of whom had entered a plea of guilty at this point — could be charged with felony murder, because they in fact

---

[24] Sifford also appeared at the arraignment and entered a plea of not guilty. She was not charged with felony murder.

already had been charged with such and had initially appeared and been arraigned with the Petitioner. Furthermore, the Superseding Indictment, filed on December 19, 2011, charged Gober with the felony murder as well, meaning that the Petitioner was aware that one more person had, in fact, been charged with felony murder and that Murry had pled guilty to felony murder, as he was not charged in the Superseding Indictment. Thus, the Petitioner was aware of who could be (and in fact, was) charged with felony murder, who had already entered into a plea agreement with the government, and who might be more inclined to enter into a plea deal, namely Gober. When the Second Superseding Indictment was filed, on June 20, 2012, Gober was no longer charged with any crime, a fact that would have been apparent to the Petitioner when he and Holley were informed of the charges contained in the Second Superseding Indictment at their arraignment on June 27, 2012. Therefore, the record defies the Petitioner's claim that he somehow did not know who was charged with felony murder, who knew about the attempted robbery and felony murder, and who could testify against him, or why the law of aiding and abetting or conspiracy would have altered his decisions to reject three plea offers.

Indeed, the Petitioner only expressed any interest in a plea deal for himself after Murry entered a plea of guilty on October 21, 2011. Even then, the Petitioner rejected two more plea offers that were substantially similar to the one he had already

rejected in August of 2011. The record shows that the performance of Petitioner's counsel was not deficient, as counsel actively tried to negotiate a plea agreement on the Petitioner's behalf. Furthermore, any prejudice the Petitioner suffered from not accepting the plea offers was of his own doing, not that of his counsel.

### IV. CONCLUSION

For the reasons stated herein, the Motion is **DENIED**. There simply is no showing of ineffective assistance of counsel in this case.

The Petitioner is **ADVISED** that he may appeal from this Memorandum Opinion and Final Order by forwarding, within sixty (60) days of the entry date of this Memorandum Opinion and Final Order, a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia, 23510. The court declines to issue a certificate of appealability for the reasons stated herein.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Final Order to the Petitioner and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

July 13, 2015

24